UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| IPOX SCHUSTER, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. |
| | ) | 15-cv-9955 |
| | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| NIKKO ASSET MANAGEMENT CO., LTD. | ) | |
| | ) | |
| and | ) | |
| | ) | |
| LAZARD ASSET MANAGEMENT LLC, | ) | |
| | ) | |
| Defendants. | ) | |

MEMORANDUM OF LAW
IN SUPPORT OF DEFENDANT NIKKO ASSET MANAGEMENT CO.,
LTD'S MOTION TO DISMISS

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT .................................................................................................... 1

BACKGROUND ........................................................................................................................... 3

ARGUMENT ................................................................................................................................ 3

I.     THE COURT LACKS PERSONAL JURISDICTION OVER NIKKO. ............................... 3

    A.   Legal Standard Governing Motions to Dismiss Pursuant to FRCP 12(b)(2). ...................... 3

    B.   The Complaint Fails To Allege Facts That Could Establish  General Jurisdiction Over Nikko. ................................................................................................................................. 5

    C.   The Complaint Fails To Allege Facts That Could Establish  Specific Jurisdiction Over Nikko. ................................................................................................................................. 6

        1.   *The Complaint Fails to Allege Sufficient Tortious Activities  Directed at Illinois To Confer Specific Jurisdiction over Nikko.* ................................................................. 7

        2.   *The Complaint Fails to Allege Activities Related to Plaintiff's Contract  Claims Sufficient to Confer Specific Jurisdiction Over Nikko* ..................................................... 11

        3.   *The Complaint Fails to Allege Activities Related to Plaintiff's Fraud and  Unfair Business Practices Sufficient to Confer Jurisdiction Over Nikko.* ............................... 12

II.    THE COMPLAINT SHOULD BE DISMISSED IN ITS ENTIRERTY PURSUANT TO RULE 12(b)(6). ................................................. 12

    A.   Legal Standard Governing Motions to Dismiss Pursuant to Rule 12(b)(6). ...................... 13

    B.   All Claims For Relief Premised On Federal Law Should be Dismissed............................. 13

        1.   *The Third and Fourth Claims for Relief Be Should Dismissed Because  The Complaint Fails to Allege That They Fall Within The Jurisdictional  Scope Of The Lanham Act.* ............................. 14

        2.   *Plaintiff's Third Claim for Relief Alleging  Trademark Infringement Should Be Dismissed.* .......... 17

        3.   *The Fourth Claim for Relief Alleging False Designation of Origin and  False Advertising Should Be Dismissed.* ................................................................... 17

    C.   The First Claim for Relief Alleging Misappropriation Under Illinois Common Law and the Twelfth Claim for Relief Alleging Unjust Enrichment Are Preempted by the Illinois Trade Secret Act and Should Be Dismissed. ................................................................. 18

    D.   The Second Claim for Relief Alleging Misappropriation  Under The Illinois Trade Secrets Act Should Be Dismissed. ................................................................................. 19

i

E.  The Fifth Claim for Relief Alleging Deceptive Trade Practices Under Illinois Uniform Deceptive Trade Practices Act Should Be Dismissed. .......................................................... 20

F.  The Eighth Claim for Relief Alleging Unfair Business Practices and Unfair Competition Claims Under the Consumer Fraud and Deceptive Business Practices Act Should be Dismissed. ..................................................................................................................... 22

G.  The Sixth Claim for Relief Alleging Dilution under the Illinois Trademark Registration and Protections Act and Illinois Common Law Should be Dismissed. .............................. 23

H.  The Seventh Claim for Relief Alleging Fraud Should be Dismissed. .................................. 24

I.  The Ninth Claim for Relief Alleging Breach of Contract Should Be Dismissed. .............. 25

J.  The Tenth Claim for Relief Alleging Breach of Implied Contract Should Be Dismissed Because the Allegations Do Not Support A Contract Implied In Fact. .............................. 27

CONCLUSION ........................................................................................................................... 28

# TABLE OF AUTHORITIES

**Cases**     **Page(s)**

*766347 Ontario Ltd. v. Zurich Capital Markets, Inc.,*
249 F. Supp. 2d 974 (N.D. Ill. 2003) ........................................................................... 25

*Abbott Labs. v. Chiron Corp.,*
No. 97 C 0519, 1997 WL 208369 (N.D. Ill. Apr. 23, 1997) ..................................... 20

*ACG Products, Ltd. v. Gu,*
No. 10-CV-716-WMC, 2011 WL 7748354 (W.D. Wis. Nov. 4, 2011) ............... 14, 15, 16

*AGA Shareholders, LLC v. CSK Auto, Inc.,*
467 F. Supp. 2d 834 (N.D. Ill. 2006) ...................................................................25, 26

*Alcar Grp., Inc. v. Corp. Performance Sys., Ltd.,*
109 F. Supp. 2d 948 (N.D. Ill. 2000) ......................................................................14, 15

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009) ................................................................................................... 13

*AT&T Corp. v. Synet, Inc.,*
45 U.S.P.Q.2d (BNA) 1656 (N.D. Ill. 1997) ............................................................ 21

*Athey Products Corp. v. Harris Bank Roselle,*
89 F.3d 430 (7th Cir. 1996) ...................................................................................... 23

*Barefield v. Vill. of Winnetka,*
81 F.3d 704 (7th Cir. 1996) ...................................................................................... 27

*Bell Atlantic Corp. v. Twombly,*
550 U.S. 544 (2007) ................................................................................................... 13

*Bernstein v. Medicis Pharm. Corp.,*
No. 03 C 5256, 2004 WL 2092001 (N.D. Ill. Sept. 15, 2004) ........................... 14, 15, 16

*Berthold Types Ltd. v. European Mikrograf Corp.,*
102 F. Supp. 2d 928 (N.D. Ill. 2000) ......................................................................... 9

*Bob Creeden & Associates, Ltd. v. Infosoft, Inc.,*
326 F. Supp. 2d 876 (N.D. Ill. 2004) ...................................................................... 21

*Burger King Corp. v. Rudzewicz,*
471 U.S. 462 (1985) ..................................................................................................... 5

*C.S.B. Commodities, Inc. v. Urban Trend (HK) Ltd.,*
626 F. Supp. 2d 837 (N.D. Ill. 2009) ......................................................................3, 4

*Calder v. Jones,*
465 U.S. 783 (1984) ................................................................................................... 10

*Century 21 Castles By King, Ltd. v. First Nat. Bank of W. Springs,*
    524 N.E.2d 1222 (Ill. App. Ct. 1988) ................................................................27

*Champion Labs., Inc. v. Cent. Illinois Mfg. Co.,*
    No. 14 C 9754, 2016 WL 164364 (N.D. Ill. Jan. 14, 2016)...............................14, 15, 16, 22

*Cohn v. Taco Bell Corp.,*
    No. 92 C 5852, 1994 WL 13769 (N.D. Ill. Jan. 14, 1994) ................................................20

*Consol. Commercial Controls, Inc. v. 5 Star Supply, LLC,*
    No. 08C4388, 2008 WL 5094402 (N.D. Ill. Nov. 26, 2008) ............................................11

*Control Sols. LLC v. Oshkosh Corp.,*
    No. 10 C 121, 2012 WL 3096678 (N.D. Ill. July 27, 2012)...........................................27, 28

*Cronimet Holdings, Inc. v. Keywell Metals, LLC,*
    73 F. Supp. 3d 907, 920 (N.D. Ill. 2014) ................................................................19

*CustomGuide v. CareerBuilder, LLC,*
    813 F. Supp. 2d 990 (N.D. Ill. 2011)................................................................24

*Davis v. Green,*
    No. 91 C 4803, 1992 WL 168924 (N.D. Ill. July 15, 1992) ............................................27

*Desmond v. Chicago Boxed Beef Distributors, Inc.,*
    921 F. Supp. 2d 872 (N.D. Ill. 2013)................................................................23

*DiLeo v. Ernst & Young,*
    901 F.2d 624 (7th Cir. 1990) ................................................................24

*Do It Best Corp. v. Passport Software, Inc.,*
    No. 01 C 7674, 2004 WL 1660814 (N.D. Ill. July 23, 2004) ...........................................25

*Eco Pro Painting, LLC v. Sherwin-Williams Co.,*
    807 F. Supp. 2d 732 (N.D. Ill. 2011).............................................................4, 6, 8

*Emerging Material Techs., Inc. v. Rubicon Tech., Inc.,*
    No. 09 C 3903, 2009 WL 5064349 (N.D. Ill. Dec. 14, 2009)..........................................18

*Gilman Opco LLC v. Lanman Oil Co.,*
    No. 13-CV-7846, 2014 WL 1284499 (N.D. Ill. Mar. 28, 2014) .......................................12

*Griffith v. Wood Bros.,*
    No. 04 C 3118, 2004 WL 2418296 (N.D. Ill. Oct. 27, 2004) ...........................................11

*Hecny Transp., Inc. v. Chu,*
    430 F.3d 402 (7th Cir.2005)................................................................18

*Helicopteros Nacionales de Colombia, S.A. v. Hall,*
    466 U.S. 408 (1984) ................................................................5

*Int'l Cafe, S.A.L. v. Hard Rock Cafe Int'l (U.S.A.) Inc.,*
    252 F.3d 1274 (11th Cir.2001) ................................................................15

*Int'l Shoe Co. v. Washington,*
  326 U.S. 310 (1945) ............................................................................................ 4

*Jennings v. AC Hydraulic A/S,*
  383 F.3d 546 (7th Cir. 2004) ............................................................................. 9

*John Walker & Sons, Ltd. v. DeMert & Dougherty, Inc.,*
  821 F.2d 399 (7th Cir. 1987) ........................................................................... 14

*KJ Korea, Inc. v. Health Korea, Inc.,*
  66 F. Supp. 3d 1005, 1012 (N.D. Ill. 2014) .................................................... 17

*KJ Korea, Inc. v. Health Korea, Inc.,*
  66 F. Supp. 3d. .................................................................................................. 17

*Learning Curve Toys, L.P. v. Playwood Toys, Inc.,*
  No. 94 C 6884, 1999 WL 529572 (N.D. Ill. July 20, 1999) ........................... 19

*Magellan Int'l Corp. v. Salzgitter Handel GmbH,*
  76 F. Supp. 2d 919 (N.D. Ill. 1999) ........................................................... 13, 19

*Malibu Media, LLC v. Julien,*
  No. 1:12-CV-01730-TWP, 2014 WL 109107 (S.D. Ind. Jan. 10, 2014) ......... 13

*Manley v. Boat/U.S., Inc.,*
  75 F. Supp. 3d 848, 853 (N.D. Ill. 2014) ....................................................... 21

*McBee v. Delica Co., Ltd.,*
  417 F.3d 107 (1st Cir.2005) ............................................................................. 15

*Miche Bag, LLC v. Be You, LLC,*
  No. 11-CV-720, 2011 WL 4449683 (N.D. Ill. Sept. 26, 2011) ................... 21, 22

*Mobile Anesthesiologists Chicago, LLC v. Anesthesia Associates of Houston Metroplex, P.A.,*
  623 F.3d 440 (7th Cir. 2010) ................................................................... 6, 7, 10

*Modern Trade Commc'ns, Inc. v. PSMJ Res., Inc.,*
  No. 10 C 5380, 2011 WL 3678724 (N.D. Ill. Aug. 19, 2011) ........................... 7

*Morse v. Abbott Labs.,*
  756 F. Supp. 1108 (N.D. Ill. 1991) ................................................................. 25

*Nicholson v. E-Telequote Ins., Inc.,*
  No. 14-CV-4269, 2015 WL 5950659 (N.D. Ill. Oct. 13, 2015) ......................... 5

*Nintendo of Am., Inc. v. Aeropower Co.,*
  34 F.3d 246 (4th Cir.1994) .............................................................................. 15

*Pickering v. ADP Dealer Servs., Inc., No. 12 C 6256,*
  2013 WL 996212 (N.D. Ill. Mar. 13, 2013) ................................................... 4, 6

*Platinumtel Commc'ns, LLC v. Zefcom, LLC,*
  No. 08-CV-1062, 2008 WL 5423606 (N.D. Ill. Dec. 30, 2008) ...................... 18

*Premium Allied Tool, Inc. v. Zenith Electronics Corp,*
    No. 08-C-2527, 2008 WL 5170853 (N.D. Ill. Dec. 10, 2008) ...................................... 13

*Purdue Research Found. v. Sanofi-Synthelabo, S.A.,*
    338 F.3d 773 (7th Cir. 2003) .............................................................................. 4, 5, 11

*Purepecha Enterprises, Inc. v. El Matador Spices & Dry Chiles,*
    No. 11 C 2569, 2012 WL 3686776 (N.D. Ill. Aug. 24, 2012) .................................... 22

*RAR, Inc. v. Turner Diesel, Ltd.,*
    107 F.3d 1272 (7th Cir. 1997) .......................................................................... 5, 8, 11

*Spitz v. Proven Winners N. Am., LLC,*
    759 F.3d 724 (7th Cir. 2014) ................................................................................ 18, 19

*St. Francis Med. Ctr. v. Vernon,*
    576 N.E.2d 1230 (Ill. App. Ct. 1991) ...................................................................... 26

*Stayart v. Yahoo! Inc.,*
    623 F.3d 436 (7th Cir. 2010) ...................................................................................... 13

*Tamburo v. Dworkin,*
    601 F.3d 693 (7th Cir.2010) ................................................................................ *passim*

*Transcraft Corp. v. Doonan Trailer Corp.,*
    No. 97 C 4943, 1997 WL 733905 (N.D. Ill., Nov. 17, 1997) .................................... 10

*Truserv Corp. v. Chaska Bldg. Ctr., Inc.,*
    No. 02 C 1018, 2003 WL 924509 (N.D. Ill. Mar. 6, 2003) ...................................... 24

*Vanity Fair Mills, Inc. v. T. Eaton Co.,*
    234 F.2d 633 (2d Cir.1956) ...................................................................................... 15

*Wilson v. Career Educ. Corp.,*
    729 F.3d 665 (7th Cir. 2013) ...................................................................................... 25

Defendant Nikko Asset Management Co., Ltd. ("Nikko") respectfully submits this Memorandum of Law, along with the Declaration of Andrew Ross Long executed on February 10, 2016 ("Long Decl."), in Support of its Motion to Dismiss ("Motion") plaintiff IPOX Schuster, LLC's ("IPOX" or "Plaintiff") complaint (Dkt. 1) ("Complaint" or "Compl.") pursuant to Federal Rules of Civil Procedure ("Rule") 12(b)(2) and 12(b)(6).

## PRELIMINARY STATEMENT

Plaintiff is in the business of licensing a series of financial indexes and its "IPOX" trademark to third-parties, and purports to do so "world-wide." The fact that much of the data and information appearing in Plaintiff's indexes is publicly available does not prevent it from using aggressive licensing tactics and issuing cease and desist ultimatums. In October 2014, Plaintiff focused its attention on Nikko, accusing it of trademark infringement and misappropriation of confidential data in relation to Nikko's U.S. Growing Venture Fund ("Nikko Fund"), and demanding that Nikko enter into a license agreement for such use in the Japanese market. Failing to successfully strong-arm Nikko into an agreement to provide it with an unreasonable, and exorbitant, financial interest in the Nikko Fund, Plaintiff filed this suit.

Plaintiff, however, knows that the misdeeds alleged against Nikko in the Complaint – even if assumed true for purposes of this Motion – have no connection to the United States or the State of Illinois. Nikko, headquartered in Tokyo, Japan, focuses its business in Asia and is that region's premier asset manager, with over 17 trillion yen in assets under management. The Nikko Fund is a Japanese investment trust established under the laws of Japan, developed for the Japanese market and marketed to Japanese investors. Subscriptions to it are sold exclusively by Japanese broker-dealers to investors in the Japanese market. Nikko's marketing and sales materials for the Nikko Fund are published in Japanese. Nikko's website for the Nikko Fund is administered in Japan and written in Japanese. Indeed, all of Nikko's activities in relation to the Nikko Fund occurred in Japan and were directed only towards Japan and Japanese investors.

1

Critically, Plaintiff knows these facts and ***Plaintiff's Complaint does not allege otherwise***. Plaintiff instituted action here, some 6,000 miles from Nikko's headquarters, merely to multiply Nikko's defense costs and secure an unwarranted settlement payoff.

Unsurprisingly, the Complaint does not allege general jurisdiction over Nikko in Illinois. Instead, the Complaint recites conclusory statements of law asserting that specific jurisdiction exists over Nikko in this district. The few contacts alleged in the Complaint between Nikko and Illinois concern Nikko's response to Plaintiff's cease and desist demand and its operation of a passive Internet website in Japan, which are insufficient, as a matter of law, to satisfy the "minimum contacts" test required by federal Due Process and Illinois' long-arm statute.

In addition to its fatal jurisdictional deficiencies, the Complaint also fails to state a claim upon which relief can be granted against Nikko. The crux of Plaintiff's fourteen claims—eleven of which are asserted against Nikko—are allegations that defendants misused Plaintiff's proprietary information and trademark without paying Plaintiff for the right to do so. However, nowhere in its Complaint does Plaintiff allege that Nikko used its trademark or proprietary information in the State of Illinois or the United States -- because Nikko never did. Plaintiff's inability to make any such allegations dooms its claims for relief against Nikko. For those reasons alone, Plaintiff's Lanham Act and state law claims under the Illinois Deceptive Trade Practices Act, Consumer Fraud and Deceptive Business Practices Act, and Trademark Registration and Protections Act are barred. Moreover, the Complaint fails to sufficiently allege other necessary elements of its state law claims against Nikko, including for misappropriation of trade secrets under the Illinois Trade Secrets Act, breach contract, and breach of implied contract. Plaintiff's claims premised on misappropriation of its confidential information are statutorily preempted by the Illinois Trade Secrets Act. Finally, the Complaint fails to plead its fraud claim against Nikko with any specificity.

2

In these premises, and as set forth fully herein, the Complaint against Nikko should be dismissed in its entirety pursuant to Rule 12(b)(2) because it fails to allege facts sufficient for the Court to exercise either general or specific jurisdiction over Nikko, and pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted, or in the alternative pursuant to Rule 12(b)(1) with respect to Plaintiff's Lanham Act claims.

## BACKGROUND

On November 4, 2015, Plaintiff initiated the above captioned litigation by filing the Complaint naming Nikko and Lazard Asset Management LLC ("Lazard") as defendants. The Complaint alleges fourteen claims for relief, eleven of which are asserted against Nikko individually and together with defendant Lazard. *See* Compl. at ¶¶ 25-85, 90-93 (First through Tenth, and Twelfth Claims for Relief).

On November 12, 2015, Plaintiff requested that pursuant to Rule 4(d) Nikko waive service of summons. On January 8, 2016, Nikko filed a waiver of the service of summons. Dkt. 21. Pursuant to Nikko's waiver of the service of summons Nikko was required to answer the Complaint or file a motion under Rule 12 by February 10, 2016.

## ARGUMENT

### I.     THE COURT LACKS PERSONAL JURISDICTION OVER NIKKO.

**A.     Legal Standard Governing Motions to Dismiss
Pursuant to FRCP 12(b)(2).**

An action against a party over whom the Court lacks personal jurisdiction must be dismissed pursuant to Rule 12(b)(2). *C.S.B. Commodities, Inc. v. Urban Trend (HK) Ltd.*, 626 F. Supp. 2d 837, 843 (N.D. Ill. 2009). Where, as here, a complaint fails to include facts sufficient to allege personal jurisdiction, and defendant moves to dismiss for lack of personal jurisdiction, plaintiff bears the burden of establishing a *prima facie* case that jurisdiction exists. *Id.* If a defendant submits evidence in opposition to the exercise of jurisdiction, "plaintiff must go beyond the pleadings and submit affirmative evidence supporting the exercise of jurisdiction."

3

*Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 783 (7th Cir. 2003). The Court must take as true those facts submitted by defendant that remain un-refuted by plaintiff. *C.S.B. Commodities, Inc.*, 626 F. Supp. 2d at 843. If no jurisdictional facts are in dispute, the Court need not convene an evidentiary hearing. *Id.; Purdue Research* 338 F.3d at 782.

The sole basis for federal jurisdiction alleged in the Complaint is premised on Plaintiff's Lanham Act (15 U.S.C. §1051 *et seq.*) claims. *See* Compl. at ¶ 1. The Lanham Act does not permit nationwide service of process and thus a federal court in Illinois may only exercise personal jurisdiction over Nikko if it would be permitted by Illinois' long-arm statute and the United States Constitution. *C.S.B. Commodities, Inc.*, 626 F. Supp. 2d at 844; *see Pickering v. ADP Dealer Servs., Inc., No. 12 C 6256,* 2013 WL 996212, at *2 (N.D. Ill. Mar. 13, 2013); Fed. R. Civ. P. (k)(1)(A). Illinois' long-arm statute permits personal jurisdiction if it would be authorized by either the Illinois Constitution or the United States Constitution. *See Pickering*, 2013 WL 996212, at *2; *Tamburo v. Dworkin*, 601 F.3d 693, 700 (7th Cir.2010), *citing* 735 Ill. Comp. Stat. 5/2–209(c). In this context, the due process requirements of the Illinois Constitution and the U.S. Constitution merge, "and as a result, the jurisdictional inquiry involves determining whether the assertion of jurisdiction over the defendant runs afoul of federal due process requirements." *Pickering*, 2013 WL 996212, at *2; *see Eco Pro Painting, LLC v. Sherwin-Williams Co.*, 807 F. Supp. 2d 732, 735 (N.D. Ill. 2011) (finding no material difference between Illinois and U.S. Constitutional due process requirements, and collapsing the personal jurisdiction analysis into a single inquiry).

Federal due process requires that a non-resident defendant have "certain minimum contacts" with a forum state "such that maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). The minimum contacts test contemplates two categories of jurisdiction: (i) general and (ii) specific. For general jurisdiction, a defendant must have "continuous and systematic" contacts with the forum. *See Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414-416 (1984);

4

*RAR, Inc. v. Turner Diesel, Ltd.,* 107 F.3d 1272, 1277 (7th Cir. 1997). Specific jurisdiction requires a court to determine whether "it is fundamentally fair to require the defendant to submit to jurisdiction of the court *with respect to this litigation.*" *Purdue Research*, 338 F.3d at 780.

Here, the Complaint fails to adequately allege general or specific jurisdiction over Nikko. Instead, the Complaint presents conclusory statements of law and recites the federal due process requirements without supporting factual allegations. Accordingly, the Court should dismiss the Complaint in its entirety against Nikko.

**B.     The Complaint Fails To Allege Facts That Could Establish General Jurisdiction Over Nikko.**

The Complaint fails to allege *prima facie* that the exercise of general jurisdiction over Nikko is appropriate. To establish general jurisdiction, a complaint must allege facts showing that a defendant's "affiliations with the State are so 'continuous and systematic' as to render [it] essentially at home in the forum State." *Nicholson v. E-Telequote Ins., Inc.,* No. 14-CV-4269, 2015 WL 5950659, at *3 (N.D. Ill. Oct. 13, 2015) (quoting *Daimler AG v. Bauman,* 134 S. Ct. 746, 754 (2014)). This requires a defendant have such extensive contacts with the forum state that it can be treated as being present in the state for essentially all purposes. *See Purdue Research,* 338 F.3d at 787; *Tamburo,* 601 F.3d at 701. Isolated or sporadic contacts are insufficient for general jurisdiction. *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 475 (1985).

Nowhere in the Complaint does Plaintiff allege facts indicating Nikko has continuous and systematic general business contacts with Illinois. Nor does Plaintiff allege *any* contacts between Nikko and Illinois that rise to the level of continuous and systematic as to render Nikko essentially at home in Illinois. The Complaint concedes that Nikko is a corporation organized under the laws of Japan, with its principal place of business in Tokyo. Compl. at ¶ 4; Long Decl. at ¶ 3. The only other allegation plausibly related to "continuous and systematic" contacts with Illinois is that Nikko operates a website that contains marketing material accessible anywhere in the world. Compl. at ¶ 20. However, operating a public Internet website can not suffice,

5

without more, to establish general jurisdiction. *Tamburo*, 601 F.3d at 701; *Pickering*, 2013 WL 996212, at *3 (finding general jurisdiction lacking although defendant maintained a public Internet website). Accordingly, Nikko is not "at home" in Illinois and the Court's inquiry of personal jurisdiction should focus on whether it can exercise specific jurisdiction over Nikko. *See Mobile Anesthesiologists Chicago, LLC v. Anesthesia Associates of Houston Metroplex, P.A.*, 623 F.3d 440, 444 (7th Cir. 2010) (considering only whether specific jurisdiction exists because plaintiff did not assert, and the evidence did not support, a claim for general jurisdiction).

**C.     The Complaint Fails To Allege Facts That Could Establish
         Specific Jurisdiction Over Nikko.**

Where, as here, there is no general jurisdiction over a defendant, in order to withstand a motion to dismiss under Rule 12(b)(2), the complaint must allege facts sufficient to establish that the defendant should "reasonably anticipate being haled into court [in the forum state]." *Eco Pro Painting*, 807 F. Supp. 2d at 736 (quoting *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)). This requires alleging facts that show (1) the defendant purposefully directed its activities at the forum state or purposefully availed itself of the privilege of conducting business in that state, and (2) the alleged injury arises out of those forum-related activities. *Pickering*, 2013 WL 996212, at *3 (quoting *Tamburo*, 601 F.3d at 702); *see also Eco Pro Painting*, 807 F. Supp. 2d at 735. Finally, even if plaintiff satisfies its burden, "'the exercise of personal jurisdiction must also comport with traditional notions of fair play and substantial justice.'" *Pickering*, 2013 WL 996212, at *3 (quoting *Tamburo*, 601 F.3d at 702).

The Complaint fails to allege any facts indicating that Nikko purposefully directed the alleged activities at Illinois such that it should reasonably anticipate being haled into court in Illinois. Instead, the Complaint alleges only two types of activities attributed to Nikko that could conceivably be relevant to the Court's specific jurisdiction inquiry and that form the basis for all of Plaintiff's claims against Nikko. The first alleged activity relates to a handful of communications between Nikko and Plaintiff discussing general and public information about

6

Plaintiff's products, and Plaintiff's allegations of wrongdoing by Nikko and demand that Nikko enter into a remedial license agreement ("Alleged Correspondence").  Compl. at ¶¶ 14-16, 73-76. The second involves Nikko's alleged use of Plaintiff's name and mark, trade secrets, and other materials ("Intellectual Property") allegedly derived from Plaintiff to manage, market, promote and solicit investors to the Nikko fund ("Alleged Use"). Compl. at ¶¶20, 22, 23.

### 1. The Complaint Fails to Allege Sufficient Tortious Activities Directed at Illinois To Confer Specific Jurisdiction over Nikko.

The Alleged Correspondence and Alleged Use do not establish that Nikko purposely directed its activities at Illinois and cannot suffice to establish that Nikko has the requisite minimum contacts with Illinois required by federal due process. *Mobile Anesthesiologists Chicago, LLC*, 623 F.3d at 444 (dismissing for lack of specific personal jurisdiction where plaintiff "did not purposefully direct its activities at Illinois"); *Modern Trade Commc'ns, Inc. v. PSMJ Res., Inc.*, No. 10 C 5380, 2011 WL 3678724, at *7 (N.D. Ill. Aug. 19, 2011) (same).

#### (a) The Alleged Correspondence is irrelevant to the Court's inquiry.

The Seventh Circuit's specific jurisdiction analysis requires that the Complaint allege plaintiff's claims against defendant "arise out of" or "relate to" defendant's contacts with the forum state to ensure that defendant should reasonably anticipate being haled into court in Illinois. *Tamburo*, 601 F.3d at 708.  The Complaint does not allege that the First and Second Claims (Misappropriation), Third and Fourth (Lanham Act), Fifth (Illinois Uniform Deceptive Trade Practices Act), Sixth (Illinois Trademark Registration and Protections Act), and Twelfth (Unjust Enrichment) Claims for Relief arise out of Nikko's Alleged Correspondence with Plaintiff.  Rather, all of these claims for relief are predicated on the Alleged Use of the Intellectual Property.  *See* Compl. *in passim*.  The Complaint also does not allege that Nikko's Alleged Correspondence with Plaintiff resulted in Nikko obtaining any of the Intellectual Property.  The Complaint fails to even allege that Plaintiff provided any of its confidential or proprietary information to Nikko in the Alleged Correspondence or as a result of the Alleged

7

Correspondence. Indeed, IPOX never sent Intellectual Property or confidential or proprietary information or granted access to Intellectual Property or confidential or proprietary information to Nikko by or through *any* of the Alleged Correspondence. Consequently, the First through Sixth and Twelfth Claims for Relief simply did not arise as a result of the Alleged Correspondence and such correspondence is irrelevant to the Court's specific jurisdiction analysis. *See RAR*, 107 F.3d at 1277 (holding a court may not aggregate contacts with Illinois— however unrelated to the claim for relief—in specific jurisdiction analysis).

> (b)    *The communications concerning Nikko's alleged wrongdoing and demand that Nikko enter into a remedial license agreement are irrelevant to the Court's inquiry.*

Jurisdiction can also not be predicated on Plaintiff's communications alleging wrongdoing by Nikko and demanding that Nikko enter into a remedial license agreement. Compl. at ¶¶ 73-76. Courts in this district recognize that responding to cease and desist communications and settlement communications does not support the exercise of specific jurisdiction. *See Eco Pro Painting, LLC*, 807 F. Supp. 2d at 738 ("the fact that [defendant] sent letters to Illinois responding to [plaintiff's] letters accusing it of infringement does not support the exercise of jurisdiction" where "defendant did not initiate th[e] correspondence; [but] simply responded"). The Complaint itself recognizes that Plaintiff initiated these communications on October 16, 2016 for the purpose of offering "a settlement to cure [alleged] past infringement." Compl. at ¶ 73. Indeed during that communication, Mr. Schuster of IPOX, demanded that Nikko either stop using the Intellectual Property or enter into a paid licensing agreement for its use. *See* Long Decl. at ¶13.Thus, Nikko's alleged replies to these communications, *see* Compl. at ¶¶ 73-76, cannot be contacts with the forum relevant to a proper specific jurisdiction analysis. *See Eco Pro Painting, LLC*, 807 F. Supp. 2d at 738 ("[i]f a court could assert personal jurisdiction over a non-resident defendant based on its response to a cease-and-desist letter, it would be relatively simple for a resident of the forum state to manufacture jurisdiction. Conversely, any

8

incentive for the non-resident to settle the dispute amicably would be eliminated; non-residents would avoid responding to such letters for fear of being sued in a foreign jurisdiction.").

        (c)      *Nikko's alleged operation of a passive website is insufficient to confer specific jurisdiction over it.*

The Complaint also fails to allege that Nikko's Alleged Use of the Intellectual Property was sufficiently directed at Illinois to confer specific jurisdiction. The only specific allegation concerning Nikko's Alleged Use of the Intellectual Property in Illinois is that Nikko operated a website that depicted Plaintiff's mark and is accessible to potential United States investors. Compl. at ¶ 20, 22. This allegation alone, however, is insufficient to confer specific personal jurisdiction over Nikko. In this district, courts have adopted the "sliding scale" approach when determining whether operating a website confers specific jurisdiction in Illinois. *Berthold Types Ltd. v. European Mikrograf Corp.*, 102 F. Supp. 2d 928, 932 (N.D. Ill. 2000). The "sliding scale" divides Internet activities into three categories: (i) active websites; (ii) passive websites and (iii) hybrid websites. *Id.* Under this approach, courts cannot exercise personal jurisdiction over a defendant who operates a passive website that merely provides information. *Jennings v. AC Hydraulic A/S*, 383 F.3d 546, 549-50 (7th Cir. 2004) (dismissing for lack of personal jurisdiction and holding that defendant's maintenance of a passive website, which merely makes available information about the company and its products, does not support the exercise of personal jurisdiction over that defendant).

The Complaint alleges only that Nikko Fund marketing material was available on its Internet website, not that Nikko transacted any business through its website. Moreover, while Nikko's website marketed the Nikko Fund to Japanese investors and, therefore, is in Japanese, investors cannot subscribe to the Nikko Fund through Nikko's website. *See* Long Decl. at ¶ 11. The Complaint further fails to allege that anyone in the United States, let alone an investor in Illinois, actually accessed the website. Where, as here, a complaint fails to allege more than simply the operation of a passive website, courts have found no specific jurisdiction exists. *See*

*e.g. Transcraft Corp. v. Doonan Trailer Corp.*, No. 97 C 4943, 1997 WL 733905, at *8, 9 (N.D. Ill., Nov. 17, 1997) (dismissing complaint alleging trademark and unfair competition claims for lack of specific personal jurisdiction because plaintiff failed to allege that defendant conducted any business with Illinois via defendant's website and the website was not specifically intended to reach Illinois residents).

> (d)     *The Alleged Use was not "expressly aimed" at Illinois*

The Complaint generally (and conclusorily) alleges that Nikko used the Intellectual Property to develop and manage the Nikko Fund, and in marketing material for the fund. *See* Compl. at ¶¶ 20-23, 27, 31, 37, 45, 57. The Complaint, however, again fails to allege that Nikko directed this use at Illinois. The Seventh Circuit has applied the Supreme Court's "effects test," *see Calder v. Jones,* 465 U.S. 783 (1984), to determine whether a defendant accused of committing an intentional tort purposely directed its activities at the forum state. *See Mobile Anesthesiologists Chicago, LLC,* 623 F.3d at 444. Under the "effects test" specific personal jurisdiction requires: (1) intentional conduct; (2) *expressly aimed* at the forum state; (3) with the defendant's knowledge that the plaintiff would be injured in the forum state. *Tamburo,* 601 F.3d at 703. The Seventh Circuit has emphasized that the "express aiming" of defendants alleged tortious actions toward the forum state is the crucial requirement of the "effects test." *Mobile Anesthesiologists Chicago, LLC,* 623 F.3d at 445, 446. The Complaint fails to make *any* allegations that Nikko expressly aimed the Alleged Use at Illinois and fails to allege that any economic harm was felt in Illinois. Even if the Complaint were to allege that Nikko aimed its Alleged Use at Illinois because it knew that Plaintiff was headquartered and would be harmed in Illinois -- it does not -- those allegations would still be insufficient to infer "express aiming" and establish specific jurisdiction. *Mobile Anesthesiologists Chicago, LLC,* 623 F.3d at 446, 447 (dismissing a trademark infringement action while rejecting plaintiff's argument that because defendant knew plaintiff was a resident of Illinois, and thus economic injury would be felt in Illinois, defendant expressly aimed its tortious

10

conduct at Illinois and holding that defendant's website that was accessible to residents in Illinois and infringed plaintiff's trademark did not constitute constitutionally sufficient minimum contacts because it was not "expressly aimed" at Illinois); *Consol. Commercial Controls, Inc. v. 5 Star Supply, LLC,* No. 08C4388, 2008 WL 5094402, at *4 (N.D. Ill. Nov. 26, 2008) (dismissing trademark misappropriation action because due process requires more contacts with the forum state than causing economic harm there).

### 2. *The Complaint Fails to Allege Activities Related to Plaintiff's Contract Claims Sufficient to Confer Specific Jurisdiction Over Nikko*

The Ninth and Tenth Claims for Relief allege that Nikko and Plaintiff formed an express or implied contract, respectively, for a license to use the Intellectual Property. *See* Compl. at ¶¶ 72-85. However, even if the parties formed a contract -- they did not, *see infra* Part II(I) -- sufficient minimum contacts cannot be established over an out-of-state defendant by simply alleging the formation of a contract with a resident of the forum state. *Purdue Research*, 338 F.3d at 781 (recognizing that the Supreme Court has found that "contracting with an out-of-state party alone cannot establish automatically sufficient minimum contacts in the other party's home forum"). Only the "dealings between the parties in regard to the disputed contract" are relevant to the minimum contacts analysis. *RAR*, 107 F.3d at 1278 (quoting *Vetrotex Certainteed Corp. v. Consolidated Fiber Glass Prods. Co.*, 75 F.3d 147, 153 (3d Cir. 1996).

The Complaint fails to allege that any contract negotiations occurred in Illinois. Even if the Complaint alleged that Plaintiff was in Illinois when the Alleged Correspondence occurred -- it does not -- that allegation would be insufficient to establish jurisdiction because Nikko's conduct in relation to the forum state determines jurisdiction, not Plaintiff's. *See Griffith v. Wood Bros.*, No. 04 C 3118, 2004 WL 2418296, at *6 (N.D. Ill. Oct. 27, 2004). Accordingly, not only are the communications initiated by Plaintiff on October 16, 2014, irrelevant to this court's jurisdictional analysis, *see supra* Part I(C)(1)(b), they are not alleged to have occurred in Illinois. Furthermore, the Complaint does not allege that Nikko was anywhere other than Japan when *any*

11

of the Alleged Correspondence -- including the correspondence initiated by Plaintiff on October 16, 2014 -- occurred, nor does it allege any other conduct of Nikko in relation to Illinois concerning the alleged formation of a contract.

3. *The Complaint Fails to Allege Activities Related to Plaintiff's Fraud and Unfair Business Practices Sufficient to Confer Jurisdiction Over Nikko.*

The Complaint fails to allege that any of Nikko's activities relate to the Seventh (Fraud) and Eighth (Unfair Business Practices and Unfair Competition under the Consumer Fraud and Deceptive Business Practices Act) Claims for Relief. *See* Compl. at ¶¶ 60-71. The Complaint only alleges activities of co-defendant Lazard in support of the Seventh and Eighth Claims for Relief. *Id.* at ¶¶ 60-71. However, each co-defendant's contacts with Illinois must be assessed individually on a motion to dismiss for lack of personal jurisdiction. *Gilman Opco LLC v. Lanman Oil Co.*, No. 13-CV-7846, 2014 WL 1284499, at *5 (N.D. Ill. Mar. 28, 2014) (quoting *Walden v. Fiore*, 134 S. Ct. 1115, 1122 (2014) ("defendant's relationship with the forum 'must arise out of contacts that the defendant *himself* creates with the forum State'...[t]therefore...'a defendant's relationship with a plaintiff or third party, standing alone, is an insufficient basis for jurisdiction"). Lazard's activities with respect to these Claims for Relief cannot be used as a basis to determine personal jurisdiction over Nikko in Illinois. *Id.*

## II. THE COMPLAINT SHOULD BE DISMISSED IN ITS ENTIRERTY PURSUANT TO RULE 12(b)(6).

The Complaint alleges that Plaintiff is the victim of tortious activity, and, in the alternative, that Nikko breached a licensing agreement with Plaintiff, and seeks damages and a preliminary and permanent injunction under fourteen separate Claims for Relief of which eleven are directed at Nikko. *See* Compl. at ¶¶ 25-85; 90-93; and Prayer For Relief, Compl. at pg. 24.

The Complaint and all of its Claims for Relief alleged against Nikko -- the First through Tenth and Twelfth Claims -- should be dismissed pursuant to Rule 12(b)(6) for failure to state a claim.[1]

**A.      Legal Standard Governing Motions to Dismiss Pursuant to Rule 12(b)(6).**

To avoid dismissal under Rule 12(b)(6), a complaint's allegations must contain sufficient facts to state a claim plausible on its face. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also Stayart v. Yahoo! Inc.*, 623 F.3d 436, 438 (7th Cir. 2010). The complaint's allegations must "allo[w] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint must allege "more than labels and conclusions" and must raise a claim for relief "above the speculative level." *Bell Atlantic Corp.*, 550 U.S. at 545; *Premium Allied Tool, Inc. v. Zenith Electronics Corp*, No. 08-C-2527, 2008 WL 5170853, at *1 (N.D. Ill. Dec. 10, 2008). Mere conclusions, including legal conclusions couched as factual allegations, are not entitled to an assumption of truth. *Malibu Media, LLC v. Julien*, No. 1:12-CV-01730-TWP, 2014 WL 109107, at *1 (S.D. Ind. Jan. 10, 2014). A complaint alleging only "'naked assertion[s]' devoid of 'further factual enhancement'" or "a formulaic recitation of the elements of a cause of action" will not survive a motion to dismiss. *Ashcroft*, 556 U.S. at 678 (quoting *Bell Atlantic Corp.*, 550 U.S. at 557); *see also Magellan Int'l Corp. v. Salzgitter Handel GmbH*, 76 F. Supp. 2d 919, 927 (N.D. Ill. 1999) (dismissing trademark infringement action where Complaint merely repeated the statutory language).

**B.      All Claims For Relief Premised On Federal Law Should be Dismissed.**

The Complaint alleges that the Court has subject matter jurisdiction pursuant to 15 U.S.C. §1121 and 28 U.S.C. §§1331, 1338 and 1367, because it alleges violations of, and claims for relief under, the Lanham Act.[2] *See* Compl. at ¶¶ 1, 36-50 (Third and Fourth Claims for

---

[1] Courts in this Circuit have analyzed and granted the dismissal of Lanham Act claims based on failure to allege an effect on commerce in the United States under both Rules 12(b)(6) - failure to state a claim upon which relief can be granted and 12(b)(1) - lack of subject matter jurisdiction. Nikko makes its motion to dismiss the Third and Fourth Claims for Relief (Lanham Act claims) pursuant to Rule 12(b)(6) and in the alternative 12(b)(1).

[2] The Complaint does not allege that this Court has subject matter jurisdiction pursuant to 28 U.S.C. §1332 - diversity jurisdiction.

13

Relief). The Third and Fourth Claims for Relief should be dismissed pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted or in the alternative pursuant to 12(b)(1) for lack of subject-matter jurisdiction.

> **1.      The Third and Fourth Claims for Relief Be Should Dismissed Because The Complaint Fails to Allege That They Fall Within The Jurisdictional Scope Of The Lanham Act.**

The Third and Fourth Claims for Relief relate to trademark infringement (15 U.S.C. §1114) and false designation of origin and false advertising (15 U.S.C. §1125(a)) under the Lanham Act, respectively. Compl. at ¶¶ 39, 47. Sections 1114 and 1125 both require that the trademark, and false designation of origin and false advertising be used "in commerce." *See* 15 U.S.C. §§ 1114(1)(a) and 1125(a)(1). "Commerce," as defined in this context, means "all commerce which may lawfully be regulated by Congress." 15 U.S.C. §1127. This court has found the Lanham Act reveals a congressional intent to exercise its power over extraterritorial activities to the fullest extent of its powers, which means those activities that substantially affect interstate commerce. *Alcar Grp., Inc. v. Corp. Performance Sys., Ltd.*, 109 F. Supp. 2d 948, 950, 951 (N.D. Ill. 2000); *John Walker & Sons, Ltd. v. DeMert & Dougherty, Inc.*, 821 F.2d 399, 408 (7th Cir. 1987). Accordingly, the Complaint must allege that defendant's actions implicate "commerce" "so as to fall within the jurisdictional scope of the act." *ACG Products, Ltd. v. Gu*, No. 10-CV-716-WMC, 2011 WL 7748354, at *2 (W.D. Wis. Nov. 4, 2011). It does not.

Courts in this district look at three factors to determine the extraterritorial reach of the Lanham Act: "(1) whether the defendant was a United States citizen; (2) whether the defendant's actions affected commerce in the United States; and (3) whether any foreign trademark law conflicted with American trademark law." *Bernstein v. Medicis Pharm. Corp.*, No. 03 C 5256, 2004 WL 2092001, at *2 (N.D. Ill. Sept. 15, 2004); *Alcar*, 109 F. Supp. 2d at 951; *Champion Labs., Inc. v. Cent. Illinois Mfg. Co.*, No. 14 C 9754, 2016 WL 164364, at *6 (N.D. Ill. Jan. 14, 2016). While failure to satisfy the first prong may not be dispositive, a complaint's failure to satisfy both the

first and second prongs generally is. *Champion Labs., Inc.*, 2016 WL 164364, at *6-7 (dismissing Lanham Act claim where accused infringer was US citizen and only the second prong was not satisfied); *Bernstein*, 2004 WL 2092001, at *2 (same); *ACG Products, Ltd.*, 2011 WL 7748354, at *4-5 (dismissing Lanham Act claim where first two prongs were not satisfied).

The Complaint fails to allege that Nikko is a United States citizen, but concedes that Nikko is a foreign entity with a principal place of business in Japan. *See* Compl. at ¶ 4. Accordingly, Nikko cannot be considered a United States citizen under this test. *See Alcar*, 109 F. Supp. 2d at 951 (dismissing Lanham Act claims in part due to defendant being a foreign entity and therefore not a United States citizen under this test).

The Complaint also fails to sufficiently allege that Nikko's actions affected commerce in the United States. Although the Seventh Circuit has not adopted a specific test to determine whether a foreign defendant's actions have an effect on commerce in the United States, other Circuits have defined the level of effect on U.S. commerce necessary to satisfy the second prong of the extraterritorial test. *See, e.g., Vanity Fair Mills, Inc. v. T. Eaton Co.*, 234 F.2d 633, 642–43 (2d Cir.1956) ("substantial effect"); *Nintendo of Am., Inc. v. Aeropower Co .*, 34 F.3d 246, 250 (4th Cir.1994) ("significant effect"); *Int'l Cafe, S.A.L. v. Hard Rock Cafe Int'l, (U.S.A.) Inc.*, 252 F.3d 1274, 1278 (11th Cir.2001) ("substantial effect"); *McBee v. Delica Co., Ltd.*, 417 F.3d 107 (1st Cir.2005) ("substantial effect" where defendant are not U.S. citizens).) It is clear, however, that an "injury to a domestic victim is not necessarily sufficient to prove an effect on United States commerce into that discussion." *Champion Labs.*, 2016 WL 164364, at *7.

The only allegation of the Complaint of a possible effect on United States commerce suggests that certain Japanese promotional materials for Nikko's Japanese fund were available to *potential* U.S. investors on the Internet. Compl. at ¶¶ 20, 22. However, the test for a sufficient effect on U.S. commerce cannot be satisfied by merely alleging that Nikko operated a website containing marketing information. *ACG Products,* 2011 WL 7748354, at *4 (dismissing trademark

15

infringement claim where complaint failed to allege that infringing product "entered the United States in any way that would have an effect on commerce" even though defendant used plaintiff's mark on its website). To satisfy the test, the Complaint must have alleged that U.S. citizens purchased a Nikko product from the website. *Id.* ("cases in which courts have found that a website bearing the infringing mark is sufficient to affect United States commerce all involve instances where goods were purchased by U.S. citizens from the website.") The Complaint does not, and cannot, contain such allegations.

Here, the accused product, the Nikko Fund, is a Japanese investment trust developed and targeted for the Japanese market. *See* Long Decl. at ¶ 4 Nikko's management of the Nikko Fund occurs exclusively in Japan. *Id.* at ¶5. The Nikko Fund is marketed only to Japanese investors. *Id.* at ¶¶7, 8. As such, the marketing materials for the Nikko Fund, including any websites operated by Nikko containing such materials, are exclusively in Japanese. *Id.* at ¶¶9, 10. Subscriptions to the Nikko Fund are sold exclusively through Japanese broker-dealers to investors residing in Japan. *Id.* at ¶ 6. It is unsurprising then that the Complaint fails to allege that the Nikko Fund was sold to any U.S. or Illinois investors. Under these circumstances, the bare-bone allegations of the Complaint concerning an improper use of Plaintiff's mark on Nikko's website do not establish an effect on U.S. commerce. *See, e.g., Bernstein*, 2004 WL 2092001, at *2 (dismissing Lanham Act claims where defendants presented affidavits showing that the manufacturing and marketing of alleged infringing products occurred exclusively in a foreign country because those activities in "no way affect[] commerce in the United States").

Moreover, the Complaint does not allege that Nikko's use of Plaintiff's mark or alleged false designation of origin and false advertising affected Plaintiff's sales in the United States. Nor could it because Nikko did not sell the Nikko Fund in the United States. *See* Long Decl. at ¶ 12. Tellingly, the damages allegations in the Complaint are geographically neutral. Compl. at ¶¶ 41, 48. As such, the Complaint again fails to allege an effect on United States Commerce. *Champion*

16

*Labs., Inc.*, 2016 WL 164364, at *6-7 (dismissing Lanham Act claim because the complaint failed to allege that the false statements at issue affected sales anywhere in the United States and where the damages allegations were geographically neutral).

Since the Complaint fails to allege facts sufficient to satisfy the extraterritorial test for Lanham Act claims, Plaintiff's Third and Fourth Claims for Relief should be dismissed.[3]

### 2. Plaintiff's Third Claim for Relief Alleging Trademark Infringement Should Be Dismissed.

Plaintiff's Third Claim for Relief alleging trademark infringement (under the Lanham Act and Illinois Common Law) similarly fails to plead that Nikko used the mark in the United States. To survive a motion to dismiss a claim for trademark infringement, a complaint must allege (1) a protectable right in the asserted trademarks and (2) that defendant's use of the mark is likely to cause confusion. *KJ Korea, Inc. v. Health Korea, Inc.*, 66 F. Supp. 3d 1005, 1012 (N.D. Ill. 2014). In this context, defendant must use the mark within the United States. The Complaint fails to allege Nikko used Plaintiff's trademark in the United States, and indeed no such use by Nikko occurred. *See* Long Decl. at ¶¶ 7-10. The Third Claim should be dismissed for this reason alone.[4]

### 3. The Fourth Claim for Relief Alleging False Designation of Origin and False Advertising Should Be Dismissed.

Even if Plaintiff's Fourth Claim for Relief (alleging false designation of origin and false advertising) fell within the jurisdictional limits of the Lanham Act -- it does not -- it should still be dismissed. In order to state a claim under the Lanham Act for false designation of origin, false description and/or representation, and false advertising under 15 U.S.C. § 1125(a) the Complaint must allege that damage was caused by actual consumer reliance on the misleading

---

[3] The Complaint contains no allegations concerning the third-prong of the extraterritorial test, namely whether any foreign trademark law conflicted with American trademark law.
[4] Plaintiff's common law trademark infringement claim requires the same elements and proofs as its Lanham Act claims and should be dismissed for the same reasons. *See KJ Korea, Inc. v. Health Korea, Inc.*, 66 F. Supp. 3d at 1012.

representations. *Emerging Material Techs., Inc. v. Rubicon Tech., Inc.*, No. 09 C 3903, 2009 WL 5064349, at *4 (N.D. Ill. Dec. 14, 2009) (dismissing false advertising claims under the Lanham Act where the complaint made "no allegation that any consumer has actually relied on [defendant's] allegedly false statements in a way that injured plaintiffs."); *see also Platinumtel Commc'ns, LLC v. Zefcom, LLC*, No. 08-CV-1062, 2008 WL 5423606, at *5 (N.D. Ill. Dec. 30, 2008) ("In order to satisfy the Lanham Act's standing requirement for false advertising claims, the plaintiff must assert a discernible competitive injury.").

Because the Complaint fails to allege any consumers knew of Nikko's alleged misrepresentations, let alone that anyone relied on them, the Fourth Claim for relief should be dismissed. *Emerging Material Techs., Inc.*, 2009 WL 5064349, at *4 ("Plaintiffs make no allegation that any consumer has actually relied on [defendant's] allegedly false statements in a way that injured plaintiffs. Absent such an allegation, they have not stated a Lanham Act claim.").

**C.    The First Claim for Relief Alleging Misappropriation Under Illinois Common Law and the Twelfth Claim for Relief Alleging Unjust Enrichment Are Preempted by the Illinois Trade Secret Act and Should Be Dismissed.**

Section 8 of the Illinois Trade Secrets Act ("ITSA") preempts non-contract causes of action that are based on misappropriation of trade secrets, and is "intended to displace conflicting tort, restitutionary, unfair competition, and other laws of [Illinois] providing civil remedies for misappropriation of a trade secret." 765 Ill. Comp. Stat. 1065/8(a)  The Seventh Circuit has observed that with the passage of the ITSA, Illinois abolished "claims other than those based on contract arising from misappropriated trade secrets, replacing them with claims under the Act itself." *Hecny Transp., Inc. v. Chu*, 430 F.3d 402, 404 (7th Cir.2005).  Moreover, the Seventh Circuit has made clear that ITSA preemption covers claims that are "essentially claims of trade secret misappropriation, even when the alleged 'trade secret' does not fall within the Act's definition." *Spitz v. Proven Winners N. Am., LLC*, 759 F.3d 724, 733 (7th Cir. 2014) (affirming ITSA preemption of quasi-contract and unjust enrichment claims where they were

18

based on misappropriation of information that did not fall within the statutory definition of a trade secret). The ITSA also preempts misappropriation and unfair competition claims dependent on the existence of confidential information that does not meet the statutory definition of a trade secret. *See Cronimet Holdings, Inc. v. Keywell Metals, LLC,* 73 F. Supp. 3d 907, 920 (N.D. Ill. 2014) (dismissing misappropriation and unfair competition claims "because the claims would not lie absent the confidentiality of the information.").

The First Claim for Relief alleges common law misappropriation. The Complaint alleges defendants used and exploited Plaintiff's *confidential information* without a license and without compensating Plaintiff. Compl. at ¶ 27, 28 (emphasis added). The ITSA preempts claims for common law misappropriation even when the alleged misappropriated information is merely confidential and does not rise to the level of a "trade secret." *See Spitz,* 759 F.3d at 733; *Cronimet Holdings,* 73 F. Supp. 3d at 920. The ITSA preempts Plaintiff's First Claim for Relief alleging misappropriation of confidential information, requiring its dismissal.

The Twelfth Claim for Relief alleges unjust enrichment in the alternative. It is essentially a prayer for restitution and dependent entirely on the alleged misappropriation of Plaintiff's trade secrets and confidential information. *See* Compl. at ¶ 91. As such, Plaintiff's unjust enrichment claim is preempted by the ITSA, and should be dismissed. *See Spitz,* 759 F.3d at 733 (affirming ITSA preemption of unjust enrichment claim where it was based on misappropriation of confidential information); *see also Learning Curve Toys, L.P. v. Playwood Toys, Inc.,* No. 94 C 6884, 1999 WL 529572, at *3 (N.D. Ill. July 20, 1999) (finding claim for unjust enrichment preempted by ITSA because the operative facts underlying the claim might support an ITSA action).

**D.     The Second Claim for Relief Alleging Misappropriation
Under The Illinois Trade Secrets Act Should Be Dismissed.**

To state a claim for misappropriation under the ITSA, a complaint must allege that the information at issue "(1) was indeed a trade secret, (2) was misappropriated and (3) was used in defendant's business." *Magellan Int'l Corp. v. Salzgitter Handel GmbH,* 76 F. Supp. 2d 919, 927

(N.D. Ill. 1999). A trade secret is information that "(1) is sufficiently secret to derive economic value, actual or potential, from not being generally known to other persons who can obtain economic value from its disclosure or use; and (2) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy or confidentiality." 765 Ill. Comp. Stat. 1065/2.

The Complaint alleges only that Plaintiff's trade secrets "are maintained in secret and confidence by IPOX."[5] Compl. at ¶ 10. Such conclusory allegations unsupported by any factual assertions cannot withstand a motion to dismiss. *See Abbott Labs. v. Chiron Corp.*, No. 97 C 0519, 1997 WL 208369, at *3 (N.D. Ill. Apr. 23, 1997) (dismissing trade secret misappropriation claim where plaintiff only alleged bare legal conclusions: "sufficiently secret ... from not being known generally to others" and "the subject of reasonable efforts to maintain their secrecy and confidentiality."). Moreover, the Complaint omits any allegations regarding Plaintiff's efforts to maintain the secrecy of its information, which failure further supports dismissal of the Second Claim for Relief for misappropriation under the ITSA. *See Cohn v. Taco Bell Corp.*, No. 92 C 5852, 1994 WL 13769, at *10 (N.D. Ill. Jan. 14, 1994) (dismissing claim for trade secret misappropriation because "the Complaint is void of all allegations regarding plaintiffs' efforts to maintain the secrecy and confidentiality of the information" even though the complaint pleaded enough facts to suggest that the information was "sufficiently secret").

**E.   The Fifth Claim for Relief Alleging Deceptive Trade Practices Under Illinois Uniform Deceptive Trade Practices Act Should Be Dismissed.**

Plaintiff's Fifth Claim for Relief alleges deceptive trade practices under the Illinois Uniform Deceptive Trade Practices Act 815 Ill. Comp. Stat. 510/2 ("UDTPA"). In support, the Complaint alleges that by reason of defendants' "acts of trademark infringement and false designation of origin, false description and/or representation, and false advertising" they have committed deceptive trade practices under the UDTPA. Compl. at ¶ 52. Where, as here,

---

[5] Despite numerous requests by Nikko, Plaintiff has, to date, failed to identify with particularity what information it claims are trade secrets that were allegedly misappropriated by Nikko.

UDPTA violations are alleged to be based on Lanham Act violations, they must be "resolved according to the principles set forth under the Lanham Act." *See Bob Creeden & Associates, Ltd. v. Infosoft, Inc.*, 326 F. Supp. 2d 876, 880 (N.D. Ill. 2004); *AT&T Corp. v. Synet, Inc.*, 45 U.S.P.Q.2d (BNA) 1656, 1660 (N.D. Ill. 1997); *see also Manley v. Boat/U.S., Inc.*, 75 F. Supp. 3d 848, 853 (N.D. Ill. 2014) ("Where a plaintiff's factual allegations under the UDTPA also form the basis for the plaintiff's claim under the Lanham Act, the legal inquiry is the same under both statutes.") Since the Complaint fails to state a claim for relief under the Lanham Act, *see supra* Part II(C), Plaintiff's UDTPA claim must be dismissed as well. *See Bob Creeden*, 326 F. Supp. 2d at 880 (dismissing UDPTA claim where Lanham Act claim was dismissed because "the legal inquiry is the same under the Lanham Act as under the....Deceptive Trade Practices Act").

Moreover, Plaintiff's Fifth Claim for Relief under the UDTPA should be dismissed because the Complaint does not allege that Nikko's activities occurred in Illinois. In order to survive a motion to dismiss under the UDPTA, a complaint must allege that "the circumstances that relate to the disputed transaction [must] occur primarily and substantially in Illinois." *Miche Bag, LLC v. Be You, LLC,* No. 11-CV-720, 2011 WL 4449683, at *6 (N.D. Ill. Sept. 26, 2011). Courts examine four factors when determining whether a transaction occurred "primarily and substantially" in Illinois: "(1) the plaintiff's residence, (2) where the misrepresentation was made, (3) where the damage to the plaintiff occurred, and (4) whether the plaintiff communicated with the defendant in Illinois." *Id.* (quoting *Specht v. Google, Inc.*, 660 F. Supp. 2d 858, 866 (N.D. Ill. 2009)). Here, there is no allegation that could plausibly support a claim that Nikko conducted any transaction "primarily and substantially" in Illinois. The mere existence of Nikko's website did not result in any transactions in Illinois. *See* Long Decl. at ¶ 11. Indeed, IPOX fails to even allege that any resident of Illinois viewed Nikko's website. *Miche Bag*, 2011 WL 4449683, at *6 (finding misrepresentation was not made in Illinois because complaint failed to "allege that any residents of Illinois actually viewed the website [which contained the allegedly false statements]").

21

Furthermore, the mere allegation of an injury to an Illinois corporation is not sufficient to show that the circumstances that relate to the disputed transaction occurred primarily and substantially in Illinois. *See Champion Labs., Inc.* 2016 WL 164364, at *6-7. Damages are not alleged to have occurred in Illinois where, as here, Plaintiff's only allegation of damages is based on the fact that Plaintiff is an Illinois corporation and the specific damages allegation is geographically neutral, *see* Compl. at ¶ 54. *See Champion Labs.*, 2016 WL 164364, at *6-7 (finding damages did not occur in Illinois where damages allegation was geographically neutral and was based on plaintiff being an Illinois corporation). Accordingly, the Complaint fails to sufficiently allege circumstances that could support a claim that Nikko's activities occurred primarily and substantially in Illinois. *See, e.g., Miche Bag*, 2011 WL 4449683, at *6 (dismissing UDPTA claim because complaint failed to allege that misrepresentation occurred in Illinois or that plaintiff was damaged in Illinois); *Champion Labs.*, 2016 WL 164364, at *6-7 (dismissing claim under UDPTA because the complaint failed to allege harm in Illinois, even though plaintiff was a Illinois corporation, which is necessary to trigger liability under the UDTPA). For this reason alone, Plaintiff's Fifth Claim for Relief should be dismissed for failure to state a claim.

**F.    The Eighth Claim for Relief Alleging Unfair Business Practices and Unfair Competition Claims Under the Consumer Fraud and Deceptive Business Practices Act Should be Dismissed.**

In order for a claim alleged under the Consumer Fraud and Deceptive Business Practices Act 815 Ill. Comp. 505/2 ("CFDB") to survive a motion to dismiss, a complaint must allege that the fraudulent or deceptive acts occurred primarily and substantially in Illinois. *Purepecha Enterprises, Inc. v. El Matador Spices & Dry Chiles*, No. 11 C 2569, 2012 WL 3686776, at *14 (N.D. Ill. Aug. 24, 2012) (citing *Avery v. State Farm Mut. Auto. Ins. Co.*, 835 N.E.2d 801 (Ill. 2005) (holding "the [Illinois] General Assembly did not intend the Consumer Fraud Act to apply to fraudulent transactions which take place outside Illinois" and therefore "a plaintiff may pursue a private cause of action under the Consumer Fraud Act if the circumstances that relate to the

22

disputed transaction occur primarily and substantially in Illinois")).  Moreover, the complaint must also allege that the fraudulent or deceptive acts "involve trade practices directed to the market generally or otherwise implicate consumer protection concerns." *Athey Products Corp. v. Harris Bank Roselle*, 89 F.3d 430, 437 (7th Cir. 1996) (affirming dismissal for "fail[ure] to allege the necessary nexus between the complained of conduct and consumer protection concerns").

Here, the Complaint fails to allege that any of Nikko's activities violated the CFDB. *See* Compl. at ¶¶ 67-70.  Nowhere in the Complaint is it alleged that any act by Nikko or any harm resulting from such act occurred in the United States or "primarily and substantially in Illinois." *See supra* Part II(C)(1).  Nor does the Complaint allege that Nikko's activities were directed at the market generally or that they implicate consumer protections.  Accordingly, the Eighth Claim for Relief should be dismissed.

**G.    The Sixth Claim for Relief Alleging Dilution under the Illinois Trademark Registration and Protections Act and Illinois Common Law Should be Dismissed.**

The Sixth Claim for Relief alleging dilution under the Illinois Trademark Registration and Protections Act ("ITRPA"), 765 Ill. Comp. Stat. 1036/65(a) and Illinois common law should be dismissed because the Complaint fails to sufficiently allege Nikko's "use" of Plaintiff's mark in Illinois.[6]  The ITRPA provides a remedy to "[t]he owner of a mark which is famous ... against another person's commercial use of a mark or trade name, if the use begins after the mark has become famous and causes dilution of the distinctive quality of the mark." *Desmond v. Chicago Boxed Beef Distributors, Inc.*, 921 F. Supp. 2d 872, 883 (N.D. Ill. 2013) (quoting 765 Ill. Comp. Stat. 1036/65(a)).  As the ITRPA explains:

> "For the purposes of this Act, a mark shall be deemed to be in use (1) on goods when it is placed in any manner on the goods or their containers or the displays associated therewith or on the tags or labels affixed thereto, or if the nature of the goods makes such placement impracticable, then on documents associated with the goods or their sale, *and the goods are sold or*

---

[6] Plaintiff's claim for dilution under Illinois common law should be dismissed for the same reasons as its claim for dilution under the ITRPA.

23

>*transported in commerce in this State*, and (2) on services when it is used or
>displayed in the sale or advertising of services and *the services are rendered in
>this State*."

Ill. Comp. Stat. 1036/5(k) (emphasis added). By definition, for a claim to survive a motion to
dismiss, the mark must be alleged to have been used on a good "sold or transported in
commerce in this State" or on a service or in advertising for services "rendered in [Illinois]."
The Complaint fails to allege that Nikko used Plaintiff's mark in Illinois and therefore Nikko's
alleged use cannot form the basis for a claim under the ITRPA.

**H.      The Seventh Claim for Relief Alleging Fraud Should be Dismissed.**

Plaintiff's Seventh Claim for Relief alleges common law fraud. *See* Compl. at ¶ 60-65.
To sufficiently state a claim for fraud under Illinois law, a complaint must allege (1) a false
statement of material fact, (2) known by defendant to be false, (3) defendant's intent to induce
plaintiff to act, (4) action by plaintiff in reliance on the truth of the statement; and (5) damage to
plaintiff resulting from such reliance. *Truserv Corp. v. Chaska Bldg. Ctr., Inc.*, No. 02 C 1018, 2003
WL 924509, at *12 (N.D. Ill. Mar. 6, 2003); *CustomGuide v. CareerBuilder, LLC*, 813 F. Supp. 2d
990, 1002 (N.D. Ill. 2011). Fraud claims are subject to the heightened pleading standard of Rule
9(b) requiring that all the circumstances of the fraud be alleged with particularity—i.e., a
complaint must allege "the who, what, when, where, and how" of the fraud. *DiLeo v. Ernst &
Young*, 901 F.2d 624, 627 (7th Cir. 1990).

The Complaint falls far short of pleading a fraud claim against Nikko with the requisite
particularity. While Plaintiff alleges its fraud claim nearly entirely against Lazard alone, the
Complaint recites no specific allegations against Nikko, *see* Compl. at ¶ 61-65, only that Nikko's
Mr. Cajetan made certain representations to Plaintiff. But the Complaint fails to allege that these
statements were false or that Mr. Cajetan knew them to be false when they were made. Compl.
at ¶ 16. The Complaint does not allege reliance, or that Plaintiff took any actions based on Mr.
Cajetan's representations. Finally, the Complaint fails to allege that Plaintiff suffered any damage

as a result of its unpleaded reliance. Any one of these deficiencies -- failure to plead falsity, reliance, or resulting damages -- warrants dismissal of Plaintiff's fraud claim. *See 766347 Ontario Ltd. v. Zurich Capital Markets, Inc.*, 249 F. Supp. 2d 974, 993 (N.D. Ill. 2003) ("Because Plaintiffs do not allege all of the elements for common law fraud, [Plaintiff's fraud claim] must be dismissed."); *see e.g. Morse v. Abbott Labs.*, 756 F. Supp. 1108, 1112 (N.D. Ill. 1991) (dismissing common law fraud claim because complaint failed to allege actual reliance).

Moreover, to the extent Plaintiff's fraud claim is based upon misappropriation of its confidential information, it would be preempted by Section 8 of the ITSA. *See supra* Part II(C); *Do It Best Corp. v. Passport Software, Inc,*, No. 01 C 7674, 2004 WL 1660814, at *10 (N.D. Ill. July 23, 2004) (dismissing common law fraud claim that merely restates plaintiff's trade secret misappropriation claim because it is preempted by the ITSA).

I. **The Ninth Claim for Relief Alleging Breach of Contract Should Be Dismissed.**

Plaintiff's Ninth Claim for Relief alleging breach of contract should be dismissed because the Complaint fails to sufficiently allege that a valid contract exists between Plaintiff and Nikko. In order to establish a breach of contract a party must show (1) that a valid and enforceable contract existed, (2) that the plaintiff performed on the contract, (3) that the defendant breached it, and (4) that the plaintiff was injured. *Wilson v. Career Educ. Corp.*, 729 F.3d 665, 683 (7th Cir. 2013). Under Illinois law, "a valid contract requires an offer, acceptance, and consideration." *AGA Shareholders, LLC v. CSK Auto, Inc.*, 467 F. Supp. 2d 834, 844 (N.D. Ill. 2006) (internal quotation omitted). Furthermore, there must be "mutual assent" between the parties as to the terms and conditions of the contract. *See id.*

The Complaint alleges that Plaintiff offered Nikko a written license agreement on or around October 28, 2014, but fails to allege that Nikko ever accepted the offer. *See* Compl. at ¶¶ 73-79. The Complaint does not allege that Nikko signed a license agreement. Compl. at ¶ 73-74; Long Decl. at ¶ 15. In Illinois, as general rule, a written contract is not binding until it is signed

25

by both parties. *See AGA Shareholders*, 467 F. Supp. 2d at 845. Furthermore, if a contract is being enforced on the basis of a single signature, "it must generally be signed by the party to be charged under the contract and delivered to the non-signing party who indicates acceptance by performing." *St. Francis Med. Ctr. v. Vernon*, 576 N.E.2d 1230, 1231 (Ill. App. Ct. 1991). Here, the Complaint fails to allege that Nikko, the party being charged in this action, ever signed any alleged written agreement or delivered an executed copy of one to Plaintiff.

The Complaint also fails to allege facts sufficient to infer that the parties' conduct indicated their "mutual assent" to any of the terms and conditions of a license agreement. "Under Illinois law, [t]he object of a signature is to show mutuality or assent, but these facts may be shown in other ways, as for example, by acts or conducts of the parties." *AGA Shareholders*, 467 F. Supp. 2d at 846 (internal quotation omitted). The Complaint does nothing more than allege conclusorily that "Nikko entered into an IPOX product license" and that the license agreement is "valid and enforceable." Compl. at ¶ 77. The only allegations put forth regarding the formation of a license agreement is that the parties communicated in relation to a settlement of alleged wrongdoing, and that Nikko "directed" Plaintiff to send a version of the license agreement executed by IPOX. Compl. at ¶ 73. In fact, Nikko's conduct subsequent to the alleged formation of the license agreement demonstrates that there was no "mutual assent" -- it never signed the agreement and explicitly informed Plaintiff that it "would not enter into the license agreement." Compl. at ¶ 73-74. Likewise, the Complaint alleges no factual basis indicating Nikko accepted the alleged license agreement through performance. In fact, the Complaint acknowledges that Nikko never performed in any way, and did not pay any license fees in consideration for its alleged use of Plaintiff's mark and/or products. Compl. at ¶ 78. The Complaint similarly fails to allege that IPOX ever performed. In short, the Complaint fails to allege facts that could support a claim for contract relief.

26

**J.    The Tenth Claim for Relief Alleging Breach of Implied Contract Should Be Dismissed Because the Allegations Do Not Support A Contract Implied In Fact.**

Plaintiff's Tenth Claim for Relief alleging breach of implied contract should be dismissed because the Complaint fails to allege the required elements of a contract implied-in-fact. "The only difference between an express contract and a contract implied in fact is that in the former the parties arrive at their agreement by words, either oral or written, while in the latter, their agreement is arrived at by a consideration of their acts and conduct." *Century 21 Castles By King, Ltd. v. First Nat. Bank of W. Springs*, 524 N.E.2d 1222, 1225 (Ill. App. Ct. 1988) (citation omitted). Thus, a complaint must allege the same elements as a breach of contract claim, including offer, acceptance, and consideration, as well as a meeting of the minds. *See Barefield v. Vill. of Winnetka*, 81 F.3d 704, 709 (7th Cir. 1996).

The existence of a contract implied-in-fact can be established by "circumstances showing intent of the parties … or by circumstances showing the general course of dealing between the parties." *Davis v. Green*, No. 91 C 4803, 1992 WL 168924, at *3-4 (N.D. Ill. July 15, 1992) (citing *U.S. v. O. Frank Heinz Construction Co.*, 300 F. Supp. 396, 399 (N.D. Ill. 1969)); *Control Sols. LLC v. Oshkosh Corp.*, No. 10 C 121, 2012 WL 3096678, at *7 (N.D. Ill. July 27, 2012) ("Courts finding contracts based on parties' conduct have typically done so either where there was repeated and ongoing conduct manifesting an agreement or where the parties had an established course of dealing to which they adhered.") (quoting *E.C. Styberg Eng'g Co. v. Eaton Corp.*, 492 F.3d 912, 919 (7th Cir.2007)). As noted above, the Complaint contains no allegations establishing that Nikko's acts or conduct manifested its intention to enter into an agreement with Plaintiff. The Complaint merely alleges that Plaintiff discussed a licensing agreement with Nikko to settle an alleged wrongful use of its trademark, which was ultimately rejected by Nikko. Compl. at ¶¶ 73-78. The Complaint does not allege that Nikko and IPOX had prior dealings which would indicate Nikko's acceptance under these circumstances, or that Nikko ever accepted and executed the written license agreement, performed under the agreement by paying license fees,

27

or engaged in any other conduct that would indicate that it had entered into an agreement with Plaintiff. Nor could it; Nikko never performed under the alleged unsigned contract by paying a licensing fee to Plaintiff. Long Decl. at ¶ 15. Without any such allegations sufficient to show the intent of the parties, the Tenth Claim for Relief must be dismissed. *See Control Sols.*, 2012 WL 3096678, at *7 (court finding that there was no implied-in-fact supply contract between parties where parties (1) did not have an established course of dealing, (2) defendant made a one-time request that plaintiff fill out certain forms to become a certified supplier, (3) defendant used defendant's pricing in connection with a government bid, and (4) defendant's engineers stated that plaintiff would be the likely supplier).

## CONCLUSION

For the reasons set forth herein, defendant Nikko respectfully requests that the Court: (i) dismiss the Complaint, and all of its Claims for Relief, with prejudice, pursuant to Rule 12(b)(2) as alleged against it; (ii) dismiss the First through Tenth, and Twelfth Claims for Relief, with prejudice pursuant to Rule 12(b)(6) as alleged against it; and (iii) grant it such other and further relief as the Court deems just and proper.

Dated: February 10, 2016

Respectfully submitted,

Of Counsel:

Mark S. Raskin
Michael S. DeVincenzo
Vincent Filardo
MISHCON DE REYA NEW YORK LLP
Two Park Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 612-3270
Facsimile: (212) 612-3297
michael.devincenzo@mishcon.com
mark.raskin@mishcon.com
vincent.filardo@mishcon.com

*/s/ Kelly V. McHale*
Kelly V. McHale
Michael D. Huber  (ARDC# 6191282)
Kelly V. McHale  (ARDC# 6298568)
CRAY HUBER HORSTMAN HEIL
& VanAUSDAL LLC
303 W. Madison Ste. 2200
Chicago, IL  60606
Telephone: (312) 332 8521
Facsimile: (312) 332 8451
kvm@crayhuber.com
mdh@crayhuber.com

*Counsel for Defendant*
*Nikko Asset Management Co., Ltd.*

28

## CERTIFICATE OF SERVICE

I hereby certify that on February 10, 2016, I electronically filed MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT NIKKO ASSET MANAGEMENT CO., LTD'S MOTION TO DISMISS, with the Clerk of Court using the CM/ECF system, which will send notification of such filing(s) to all attorneys of record.

/s/   Kelly V. McHale
Kelly V. McHale

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISCTRICT OF ILLINOIS
EASTERN DIVISION

---------------------------------------------------------------x

IPOX SCHUSTER, LLC,                            :
                                               :
                              Plaintiff,       :      **Civil Action No. 15-C-9955**
                                               :
                                               :
                                               :
                    v.                         :
                                               :
                                               :
NIKKO ASSET MANAGEMENT CO., LTD.               :
                                               :
and                                            :
                                               :
LAZARD ASSET MANAGEMENT LLC,                   :
                                               :
                             Defendants.       :
---------------------------------------------------------------x

## DECLARATION OF ANDREW ROSS LONG IN SUPPORT OF NIKKO ASSET MANAGEMENT CO. LTD.'S MOTION TO DISMISS

I, Andrew Ross Long, hereby declare the following under penalty of perjury pursuant to 28 U.S.C. §1746:

1.      I am the Chief Legal Officer of defendant Nikko Asset Management Co., Ltd. ("Nikko"). I submit this declaration in support of Nikko's motion to dismiss plaintiff's complaint ("Complaint") pursuant to Federal Rules of Civil Procedure 12(b)(2), 12(b)(6), and, in the alternative, 12(b)(1). I am fully familiar with, and have personal knowledge of, the facts and circumstances set forth herein.

2.      In my capacity as Chief Legal Officer and on behalf of Nikko, I am familiar with the development, management and marketing of the Nikko US Growing Venture Fund ("Nikko Fund"), identified in the Complaint, and accused by plaintiff to infringe its trademark, among other allegations.

3.      Nikko is an asset management firm headquartered in Tokyo, Japan.

4.      The Nikko Fund is an investment trust established under the laws of Japan developed and targeted for the Japanese market.

5.      Nikko is the investment manager of the Nikko Fund and it manages the Nikko Fund in Japan.

6.      Subscriptions to the Nikko Fund are exclusively sold to investors in the Japanese market through Japanese broker-dealers who are registered with the Financial Services Agency of Japan.

7.      Nikko markets the Nikko Fund exclusively in Japan, and only to investors in the Japanese market.

8.      The Nikko Fund was never marketed in the United States or the State of Illinois, and was never marketed to anyone in the United States or the State of Illinois.

9.      All marketing materials for the Nikko Fund are written in the Japanese language.

10.     Nikko's website containing marketing materials for the Nikko Fund is administered in Japan and written in Japanese.

11.     Investors cannot subscribe to the Nikko Fund through Nikko's website.

12.     Nikko did not sell the Nikko Fund to any United States or Illinois investors.

13.     On or about October 16, 2014, Mr. Schuster of IPOX initiated a series of communications with Nikko.  In those communications, IPOX alleged that Nikko used IPOX's proprietary information in Nikko Fund marketing materials, and demanded that Nikko enter into a licensing agreement.

14.    On or about October 17, 2014, as part of its demand, IPOX sent Nikko by email a draft proposed licensing agreement which territorially limited Nikko's use of IPOX's trademarks and IPOX's indexes to Japan.

15.    Nikko never agreed to the terms of that or any other licensing agreement with IPOX. Nikko never signed a licensing agreement with IPOX, and never paid any licensing fees to IPOX.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 10th day of February 2016, at New York, NY.


_____
ANDREW ROSS LONG

3